# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOHN DOE,<br><br>      Plaintiff,<br><br>    v.<br><br>ADVOCATE AURORA HEALTH, INC.<br>GROUP HEALTH BENEFIT PLAN,<br><br>      Defendant. | No. 2:26-cv-860<br><br>**COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff John Doe, through his attorneys, alleges:

1.     This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question. This action is brought for the purpose of obtaining benefits under the terms of an employee benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan. Plaintiff seeks relief, including but not limited to: health coverage under the Plan, approval of benefits for healthcare expenses under the Plan, prejudgment and post-judgment interest, and attorneys' fees and costs.

2.     Plaintiff John Doe is, and was at all times relevant, a resident of Racine County, Wisconsin.

3.      Plaintiff was at all relevant times a covered participant under the Defendant Advocate Aurora Health, Inc. Group Health Benefit Plan (the "Plan"), an employee welfare benefit plan regulated by ERISA and pursuant to which Plaintiff and his minor daughter, L.C., were and are entitled to health benefits.

4.      Plaintiff is informed and believes that the Plan has its principal place of business in the State of Wisconsin, is authorized to transact and is transacting business in this judicial district, the Eastern District of Wisconsin, and can be found in the Eastern District of Wisconsin.

5.      Plaintiff lives in this district, the Plan can be found in this district, and the claims at issue herein were administered in this judicial district. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2).

6.      Plaintiff is informed and believes that the Advocate Aurora Health, Inc. Group Health Benefit Plan is self-funded by Advocate Aurora Health, Inc.

7.      Plaintiff is informed and believes that UMR, a subsidiary of UnitedHealthcare Insurance Company ("UHC"), administered health benefits under the Plan and acted on behalf of the Defendant through December 31, 2025.

## FIRST CLAIM FOR RELIEF
## DENIAL OF PLAN BENEFITS

8.      Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

9.      Plaintiff seeks benefits for his child L.C.'s residential treatment at The Heritage Community Residential Treatment Center ("Heritage") for dates of service April 11, 2025 to the present.

10.     The Plan provides coverage for medically necessary residential treatment of patients diagnosed with mental illness.

<u>L.C.'s Diagnoses and Treatment History</u>

11.     In 2024, L.C. was struggling with severe mental illnesses including major depressive disorder, mixed receptive-expressive language disorder, social (pragmatic) communication) disorder, and generalized anxiety disorder, as well as obsessive compulsive behaviors.

12.     L.C. attended partial hospitalization treatment[1] without improvement.

13.     L.C.'s condition deteriorated and resulted in her refusal to attend school, complete social isolation, refusal to participate in partial hospitalization or outpatient treatment, and verbal and physical aggression toward family members. She developed obsessive compulsive habits including obsessive handwashing.

<u>L.C.'s Admission to Heritage and UMR's Approval of Benefits</u>

14.     On January 3, 2025, L.C. was admitted to Heritage for residential treatment.

15.     L.C. presented symptoms of depression (anhedonia; avolition; insomnia; hypersomnia; psychomotor agitation; worthlessness; guilt; hopelessness; impaired concentration), anxiety (excessive worry; difficulty controlling the worry; restless; easily fatigued; difficulty concentrating; irritability; sleep disturbance), panic (palpitations; sweating; trembling/shaking; shortness of breath; feeling of choking; chest pain; dizzy/lightheaded; fear of losing control; chills or hot flashes), and obsessive compulsive behaviors (recurrent, persistent, unwanted or intrusive thoughts; *i.e.* mouth washing and cleaning the sink repeatedly for 45 minutes twice daily).

---

[1] For reference, there are generally five levels of care for the treatment of patients with mental illnesses: inpatient hospitalization (for medically/psychiatrically unstable patients requiring 24/7 care), residential treatment (for medically stable patients requiring 24/7 care), partial hospitalization (6-8 hours per day, 5 days per week), intensive outpatient (3 hours per day, 2-3 days per week), and outpatient (1 hour therapy sessions). *Doe v. Blue Cross Blue Shield of Illinois*, 492 F. Supp. 3d 970, 973 (D. Ariz. 2020).

16. Defendant approved benefits for L.C.'s residential treatment at Heritage as medically necessary and continued to approve benefits through April 10, 2025.

Defendant's Denial of Benefits

17. In a letter dated April 10, 2025, the Advocate Aurora AXCES Care Coordination Team ("Advocate Aurora") denied Plaintiff's request for continued residential treatment benefits as not medically necessary based on MCG criteria.

18. Advocate Aurora claimed:

1. The patient was not exhibiting psychiatric, substance use, or medical complications that required 24-hour residential level of care.
2. The patient continued to deal with communication issues, but the patient was not posing a risk of harm to self or others.
3. The patient was not noted to be physically aggressive.
4. Her psychotropic medications had been adjusted, but there were no significant side effects.
5. The patient did have support from her family.
6. The patient was not posing a risk of harm to self or others if treatment occurred in a lower level of care.

19. The letter was signed by Sandy Stadler, LCSW, CEAP, an Account Executive and Behavioral Health Care Coordinator at Advocate Aurora.

Plaintiff's Appeal to UMR

20. In a letter dated April 28, 2025, Plaintiff submitted an urgent appeal to UMR.

21. Plaintiff disputed claims that L.C. could safely be treated at a lower level of care:

[L.C.] is currently receiving treatment for Obsessive-Compulsive Disorder (OCD), anxiety, anger issues and major depressive disorder. Her clinical team has concluded that she continues to require a highly structured, 24-hour therapeutic environment to ensure her safety and sustain the progress she has made. Bringing her home prematurely, without the proper transition and stabilization, would significantly endanger her mental health and well-being.

22. Plaintiff disputed claims that L.C. was not a danger to herself or others by providing incident reports within the last week illustrating her physical altercations

despite the 24/7 structure of residential treatment: "[L.C.] is still having many major disruptions stemmed from her inability to control her anger. She had to be put in a safety hold and removed from her home."

23.     Plaintiff disputed claims that L.C. did not exhibit psychiatric complications that required residential treatment by providing examples of self-harm through OCD behaviors which required heightened supervision even within the 24/7 structure of residential treatment:

> [L.C.] continues to experience intrusive obsessive behaviors that impact her daily life. One example is her obsessive hand washing which caused a terrible infection and landed her in dermatology office. [L.C.] had to go on two medications and have her hands wrapped. The staff had to monitor [L.C.] at night for two weeks.

24.     Plaintiff wrote that L.C.'s treatment team determined L.C. was a danger to herself or others due to OCD behaviors and physical altercations in residential treatment which supported the medical necessity of 24 hour residential care.

<u>UMR's Appeal Denial</u>

25.     In a letter dated May 5, 2025, UMR denied the appeal with one sentence: "Residential care is no longer necessary due to adequate patient stabilization or improvement."

26.     UMR did not explain the basis for its claims of "adequate patient stabilization or improvement."

27.     UMR did not cite any plan provision relied on for the decision.

28.     UMR did not cite any clinical guidelines relied on for the decision.

29.     UMR did not address or dispute Plaintiff's appeal letter detailing L.C.'s danger to herself and others and psychiatric complications.

30.     Defendant wrongfully denied health benefits for L.C.'s residential treatment, in the following respects, among others:

(a)     Failure to authorize and pay for health benefits required by the Plan when Defendant knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the Plan;

(b)     Failure to provide reasonable explanations of the bases relied on under the terms of the Plan, in relation to the applicable facts and plan provisions, for the requested health benefits;

(c)     After the request was denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary to perfect his request along with an explanation of why such material is or was necessary; and

(d)     Failure to properly investigate the merits of the request and appeal.

31.     Plaintiff is informed and believes and thereon alleges that Defendant wrongfully denied Plaintiff's claims for benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this litigation and which Plaintiff will immediately make Defendant aware of once said acts or omissions are discovered by Plaintiff.

32.     Following the denial of health coverage under the Plan, Plaintiff exhausted all administrative remedies required under ERISA and performed all duties and obligations on his part to be performed.

33.     As a proximate result of the denial of benefits for residential treatment, Plaintiff has been damaged by out-of-pocket cost of residential treatment in the amount of approximately $240,000.00.

34.     As a further direct and proximate result of this improper determination regarding the medical claims, Plaintiff, in pursuing this action, has been required to incur attorneys' costs

and fees. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

35.     Due to the wrongful conduct of Defendant, Plaintiff is entitled to enforce his rights under the terms of the Plan.

**<u>PRAYER FOR RELIEF</u>**

Wherefore, Plaintiff prays for:

1.     Approval and payment of health benefits for L.C.'s residential treatment at Heritage;

3.     Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

4.     Payment of prejudgment and post-judgment interest; and

5.     For such other and further relief as the Court deems just and proper.

Dated: May 14, 2026                                    GREEN HEALTH LAW, APC

                                        By:     */s/ Elizabeth K. Green*
                                                Elizabeth K. Green
                                                WI Bar/CA Bar 199634
                                                Attorney for Plaintiff John Doe
                                                Green Health Law, APC
                                                201 N. Brand Blvd., Suite 200
                                                Glendale, CA 91203
                                                Telephone: (818) 722-1164
                                                E-mail: egreen@greenhealthlaw.com


                                                LISA SEREBIN LAW


                                        By:     */s/ Lisa S. Serebin*
                                                Lisa S. Serebin
                                                WI Bar 1000255
                                                Attorney for Plaintiff John Doe
                                                Lisa Serebin Law
                                                100 Pine Street, Suite 1250
                                                San Francisco, CA 94111

Tel: 415-335-6210
E-mail: lisa@lisaserebinlaw.com

Attorneys for Plaintiff
John Doe